# Alexander P. Robertson et al. v. H. E. Bucklen & Company et al.

1. CORPORATIONS—*Earnings Do Not Belong to Stockholders Until a Dividend is Declared.*—Earnings do not belong to the stockholders until dividends are declared, and the directors of the corporation have authority in the absence of fraud or bad faith to exercise their discretion in supplying earnings to strengthen the capital of the concern, acting always in good faith, within the charter powers, and for the best interests of all those interested in the concern.

2. SAME—*Illegal for a Majority Stockholder to Sell Property to Corporation at a Sale Authorized by Himself.*—It is illegal and fraudulent for a majority stockholder to sell property to the company at a sale authorized by himself. Such transaction may be set aside in the same way and to the same extent that a purchase of corporate property by a director may be set aside.

3. SAME—*Directors May Not Derive Personal Advantage from Contracts with Corporation.*—Directors are precluded by their fiduciary capacity from deriving any personal advantage from contracts made by their authority as directors, except as they share as stockholders in whatever benefit is derived by the corporation from the transactions.

4. SAME—*When Acts of Directors Disqualified by Self-Interest May be Ratified by the Stockholders.*—If the transaction is not in fact fraudulent or detrimental to the corporation, it may be ratified by the stockholders, although the directors were disqualified by their self-interest.

5. SAME—*Upon What Acts of the Majority an Action May Be Maintained by the Minority.*—It is not every question of mere administration or of policy in which there is a difference of opinion among the stockholders that enables the minority to claim that the action of the majority is oppressive, and which justifies the minority in coming into equity to obtain relief. In such cases the will of the majority shall generally govern. Where the action of the majority is plainly a fraud upon or oppressive to the minority stockholders, an action may be maintained.

6. FREEHOLD—*When Not Involved.*—A freehold is not directly involved in an attempt to set aside a conveyance of real estate from a majority stockholder and to compel such stockholder to repay to the corporation the purchase money.

**Bill to Set Aside a Conveyance.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed March 31, 1903.

ROBLIN & SICKLESTEEL, attorneys for appellants.

The directors of a solvent corporation are trustees for

all the stockholders, and the relationship of trustee and *cestui que trust* exists between them. Beach v. Miller, 130 Ill. 170; Roseboom v. Whittaker, 132 Ill. 87 ; Charter Gas Engine Co. v. Charter, 47 Ill. App. 59 ; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587; Miner v. Belle Isle Ice Co., 93 Mich. 97; Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456; Aberdeen Ry. Co. v. Blaikie, 1 Macq., H. of L. Cas. 461; Gilman C. & S. R. R. Co. v. Kelly, 77 Ill. 434; Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 332; Mullanphy Savings Bank v. Schott, 135 Ill. 672; Beach on Corporations, Secs. 241, 242; 16 Am. Law Review, 917; Cumberland Co. v. Sherman, 30 Barb. 553.

It is a rule of universal application that a trustee, or one who has duties of a fiduciary character to discharge toward his principal, shall not be allowed to enter into engagements in which he has, or can have, a personal interest, conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strict is this principle adhered to that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. Fox v. Mackreth, 1 White & Tudor Leading Cases, 105 ; Aberdeen Ry. Co. v. Blaikie, 1 Macq. H. of L. Cas. 461 ; Wood v. Dummer, 3 Mason, 309 ; Michoud v. Girod, 4 How. 503; People v. Overyssel, 11 Mich. 222; F. & P. M. R. R. Co. v. Dewey, 14 Mich. 477; Mayr v. Hodge & Homer Co., 78 Ill. App. 564, 565; Atwater v. Am. Exchange Bank, 152 Ill. 613; Higgins v. Lansingh, 154 Ill. 363.

A stockholder making a contract with a corporation of which he is a member is held to a larger measure of candor and good faith than a stranger. Atwater v. Am. Exchange Bank, 152 Ill. 615.

*A fortiori*, is much more so when the stockholder is the controlling stockholder, director, president, treasurer and general manager, and the board of directors consist of his relatives and employes. Currier v. R. R. Co., 35 Hun, 355; Jackson v. McLean, 36 Fed. Rep. 213 ; Ervin v. R. R. Co., 27 Fed. Rep. 625; Sellers v. Phoenix Iron Co., 13 Fed. Rep. 20; Twin-Lick Oil Co. v. Marbury, 91 U. S. 590; Mumford

v. Ecuador Development Co., 111 Fed. Rep. 639; Davis v. Railroad Co., 22 Fed. Rep. 883; Miner v. Belle Isle Ice Co., 93 Mich. 97.

GARNETT & GARNETT and Smoot & Eyer, attorneys for appellees.

An officer of a corporation may sell his property to the corporation, there being a majority of disinterested directors, the company needing the property, where the price paid for the same was a fair and reasonable price, and the purchase was ratified and approved by the stockholders. Higgins v. Lansingh, 154 Ill. 301, 378; Rogers v. Nash., Chat. & St. L. Ry. Co., 91 Fed. Rep. 299; Porter v. Pittsburg, etc., Co., 120 U. S. 670; Schroeder v. Walsh, 120 Ill. 410, 411; People v. Pullman Co., 175 Ill. 139, 140; Burgett v. Osborne, 172 Ill. 238; Hawley v. Hawley, 180 Ill. 594.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This suit was brought against the appellee corporation and its directors to set aside a deed of conveyance of real estate made by Herbert E. Bucklen to the said corporation which it is alleged was made in pursuance of an unlawful and fraudulent conspiracy to divert from the said company all of the assets and profits as fast as they accumulated, for the sole use of said Herbert E. Bucklen. It is alleged that the consideration paid for the land by the corporation was exorbitant and improvident.

The evidence is quite voluminous, and the counsel on either side have filed elaborate briefs, in which much space is devoted to the statement and discussion of questions of fact. It would serve no useful purpose to review the evidence at length, and we shall confine ourselves mainly to stating our conclusions upon the questions involved. The burden of the charges is that Herbert E. Bucklen, being the owner of nine-tenths of the stock of the corporation, has undertaken to absorb the profits of the company with the object and purpose of avoiding the payment of dividends; that to do this he has caused the company to purchase of him at an exorbitant and unreasonable price certain real

estate which was not necessary for the use of the corporation; that he has drawn large sums of money for salaries without authority of the directors, in violation of the by-laws, and that he has charged off a part of the capital represented by certain assets called " proprietaries," as another means of diminishing the apparent profits of the business.

The capital of the concern is $1,000,000. It was organized under the laws of this state in the autumn of 1891, its object being to manufacture and sell proprietary medicines. The defendant Herbert E. Bucklen subscribed for 9,000 shares, the larger part of which he still holds. The complainants herein are the holders of 610 shares, of a par value of $61,000. Appellant Alexander P. Robertson was a director, and employed as manager of the business until 1898, when a difficulty arose over his salary between him and Herbert E. Bucklen. He was dropped from the directory and lost his position. Since then he has received no dividends on his stock. It appears that the company earned and paid dividends regularly until June 25, 1898. Since then it has paid no dividends, although it is said its net profits for the three succeeding years aggregated over $400,000. These profits have been in part used to reduce what is known as the " proprietary account," which included the formulas, trade-marks and good will, and which, it is alleged, were purchased by the corporation from said Bucklen at the time of the company's organization at a cash valuation of $804,293.55. It does not appear that this reduction of the amount standing in that account, as invested in capital, has been made because any of these " proprietaries " have been sold or otherwise disposed of by the corporation. Whatever of capital has been represented by them the company still holds. The change consists in a reduction of the amount which they have heretofore been supposed to represent on the books of the concern, the idea being apparently that they are now less valuable than formerly, and that they should appear on the books at what is supposed or assumed to represent more nearly their real value. It is not claimed or contended that the

company has parted with anything by this process. It has merely replaced out of its earnings to the account of capital a supposed depreciation in value of the said "proprietaries." The difficulty, from complainants' point of view, is that, by this means, profits have been added to capital which would otherwise have been applied to dividends. It is well established, however, that earnings do not belong to the stockholder until dividends are declared, and that the directors of the corporation have authority, in the absence of fraud or bad faith, to exercise their discretion in applying earnings to strengthen the capital of the concern, acting always in good faith within the charter powers and for the best interests of all those interested in the concern.    Alsop v. DeKoven *ante* page 190.

When the corporation began business in 1891, it leased of Herbert E. Bucklen what is known in this proceeding as the "Peck Court property," and also the ground floor of the building at the southwest corner of Michigan avenue and Peck Court. Said Bucklen then owned the property occupied by said buildings, having a frontage of sixty feet, the land itself having a frontage of eighty feet; and he afterward acquired vacant land adjoining, known as the north half of lot 4. March 31, 1899, said Bucklen proposed to the directors the purchase of the Peck Court property for $200,000. The proposition was at once accepted and the conveyance made. The corporation then proceeded to erect a new building on part of the property, at a cost of over $29,000. The present bill of complaint was filed March 13, 1901, nearly two years after said conveyance from Bucklen to the corporation, its purpose being, as before stated, to set aside said conveyance. It was claimed by appellants that, instead of being worth $200,000, the property was worth not to exceed $125,000. While this suit was pending, in September, 1901, the board of directors, by resolution, authorized the reconveyance to Bucklen of the said Peck Court property for $229,623.47, the amount it had cost the corporation, but also authorized the immediate purchase from said Bucklen of all of lot 1

and the north half of lot 4, for the sum of $470,000. The reconveyance and repurchase of the same and additional property were parts of one and the same transaction. Of this sum $255,000 in cash was paid to Bucklen, the corporation assuming a mortgage of $75,000, which bore interest at three and one-half per cent only, and securing the balance of $140,000 by a trust deed, said balance payable to said Bucklen, bearing interest at five per cent per annum. It is claimed by appellees that these transactions were legitimate, for the benefit of the corporation and within its powers.

Appellees have urged that the bill of complaint should be dismissed because it is said a freehold is involved. We can not concur in this view. The title to the property is not brought into question. The bill seeks only to set aside certain conveyances as fraudulent, and it would, as appellants suggest, be inequitable to compel Bucklen to repay to the corporation the moneys it is claimed he has taken in fraud of the rights of the stockholders, without returning to him the real estate, the title to which he transferred to the company. The substantial ground upon which the bill seeks the relief prayed is, that Bucklen has fraudulently diverted to himself all the profits of the corporation so as to prevent the payment of dividends on appellants' stock, and that to do this he pretended to convey real estate, while in fact, as the owner of a largely controlling interest in the stock, he controls, and still in substance owns, the real estate for which he has fraudulently received this large sum of money. Appellants seek not only to set aside the deeds of conveyance but to compel repayment from Bucklen. This is not a case where the right of freehold is directly involved. No question of title is in controversy. Goodkind v. Bartlett, 136 Ill. 18–21; Hibernian Banking Association v. Commercial National Bank, 157 Ill. 576–578.

It is contended by appellees that the sale of the real estate made in 1901, was valid. It is not denied that the directors of a solvent corporation are trustees for all the stockholders, and that such trustee is not to be allowed to

profit himself at the expense of those whose interests he represents. The general rule is sufficiently stated in Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 320–335; see, also, Atwater v. American Exchange Bank, 152 Ill. 615. The Superior Court found in the case before us that the original purchase of the Peck Court property was fraudulent, the directors of the corporation being controlled and dominated by Herbert E. Bucklen, and the purchase being in effect made by the latter from himself at a price fixed by him, without reference to the actual value of the property. But it was also held that appellants had been guilty of laches so far as this sale is concerned, having waited nearly two years before attacking it, during which time a building had been erected on the land. We are not disposed to question the propriety of either of these findings. They are both justified by the evidence, although it is claimed by appellants that the deeds were not put on record until just before the commencement of this suit. The building, however, was erected immediately after the transfer, and it is not claimed that if appellants did not have notice of all the details of the transaction, they could not have ascertained the facts upon inquiry. The bill in this case sought to set aside the conveyance. For this purpose it was delayed, we think, too long.

However, that conveyance was in form, at least, subsequently rescinded by the action taken in 1901, when, as parts of a single transaction, the Peck Court property was conveyed to Bucklen and immediately reconveyed by him to the corporation with other property. The substantial question is whether this last conveyance, for which Bucklen received $470,000 in September, 1901, made during the pendency of this litigation, is to be deemed valid as against complaining stockholders who have not consented. It is, we think, entirely evident from the undisputed facts that Herbert E. Bucklen dominated and controlled the other directors and that the sale was made in pursuance of a policy dictated substantially by himself. There is evidence tending to show that others of the directors agreed with

him as to the policy and now agree that it is wise for the corporation to acquire tangible property sufficient for its business needs now, and for future wants. It is said in Chicago Hansom Cab Co. v. Yerkes, *supra* (p. 335): "It is a general rule administered by courts of equity, that where one person has the power of disposition of the property of another without the consent of that other, he shall not be allowed to become personally interested in it himself; and this without regard to any question of fairness in the immediate transaction; for he shall not be allowed to occupy a position where self-interest would tempt a betrayal of duty. This rule is plainly applicable here, and it has been so applied in adjudicated cases. It is said in Cook on Stockholders, Sec. 653: 'It is illegal and fraudulent for the majority of the stockholders to purchase the property of the company at a sale authorized by themselves. Such a purchase by the majority may be set aside in the same way and to the same extent that a purchase of corporate property by a director may be set aside.' See, also, Bigelow on Frauds (Vol. 2, p. 645) where it is said: 'No act of the majority can purge the fraud of appropriating the common property to their own benefit by any portion of the corporators.' " The court thereupon cites a number of cases sustaining the views stated. It is said also in Atwater v. American Exchange Bank, 152 Ill. 605–615: "A stockholder in making a contract of any kind with the corporation of which he is a member is in some sense dealing with a creature of which he is a part and holds a common interest with the other stockholders, who with him constitute the whole artificial entity, and is properly held to a larger measure of candor and good faith than if he were not a stockholder." The principle is well established that directors are precluded by their fiduciary capacity from deriving any personal advantage from contracts made by their authority as directors, except as they share as stockholders in whatever benefit is derived by the company from the transactions. To use their positions to obtain any personal benefit inconsistent with their duty to the company and

the other stockholders is to commit a fraud upon the company. If in the case before us Herbert E. Bucklen has in fact used his position as controlling stockholder and dominating director to obtain for himself personally a pecuniary advantage at the expense of the company and the minority stockholders, he should not be permitted to retain what he has thus received. And it is equally a fraud and abuse of the fiduciary authority of a controlling stockholder and director, to so manage the corporation's affairs, no matter under what pretense, as to prevent all stockholders alike from sharing in the success of the company's business. No such trustee has an equitable right to use his position to gratify private malice, any more than he has to acquire personal advantage at the expense of the company. It is contended in the case before us that the transaction of September, 1901, was undertaken to cover up and continue the fraud in the sale of the Peck Court property made March 31, 1899, for $200,000, said to be much in excess of its value. On the other hand it is claimed by appellees that the transaction of 1901 was for the benefit of the company, which it is said acted wisely in acquiring valuable property suitable for its needs and demanded by its expanding business, and that the price paid therefor was reasonable and proper, and what it would have had to pay for the same property to a stranger. A court of equity will scrutinize with care a transaction of this kind, especially where, as here, there is evidence tending to show that the sudden cessation of dividends and diversion of profits to the purchase of property from a controlling stockholder and director followed immediately upon a difficulty between him and another stockholder whom he has caused to be discharged from a salaried position and who is the principal sufferer by the failure to pay dividends. We have examined the evidence as to the transactions in controversy. No good purpose could be subserved by reviewing them in detail. We are not satisfied that appellee, Herbert E. Bucklen, has acted in good faith for the best interests of the corporation, but the evidence is such that we can not say the

corporation itself has not benefited by the policy pursued. There is evidence which can not be ignored tending to show that the property was fairly worth about the price paid for it by the company, and that it is a wise policy for the corporation to acquire tangible property, a part of which it needed at once, and the rest of which it is likely to need in the near future. Whether this could not have been more properly done gradually, without entire stoppage of dividends, we are not called on to determine. It is doubtless true that under the evidence additional relief might perhaps have been, without impropriety, granted appellants; but we are unable to find satisfactory grounds for interfering with the decree entered by the chancellor in the Superior Court. The sale complained of was subsequently ratified at a stockholders' meeting, as it might be expected to be, where, as here, the controlling director whose action is complained of is the holder of nine-tenths of the capital stock. If, however, the transaction is not in fact fraudulent or detrimental to the company, it appears to be capable of ratification by the stockholders, although the directors were disqualified by self-interest. 2 Morawetz on Corp., Sec. 626. In Gamble v. Q. C. W. Co. et al., 123 N. Y. 91–99, it is said that it is not every question of mere administration or of policy " in which there is a difference of opinion among the shareholders that enables the minority to claim that the action of the majority is oppressive, and which justifies the minority in coming into equity to obtain relief. Generally the rule must be that in such cases the will of the majority shall govern." Nevertheless, where the action of the majority is plainly a fraud upon or oppressive to the minority shareholders, an action may be maintained. Higgins v. Lansingh, 154 Ill. 301–378–385. The corporation had a right to acquire real property for manufacturing purposes. The People v. Pullman Car Co., 175 Ill. 125–139. Upon the whole case, we are unable to say that the decree is erroneous in respect to the sale to and purchase by the corporation of the premises in question.

Objection is made to that part of the decree which orders said Herbert E. Bucklen to pay to the corporation

$14,751.20 salary, which he had received without formal authority from the board of directors. We have considered the evidence upon this point, and are of opinion that the decree is not erroneous in this respect.

The supplemental bill seeks relief in other respects which the decree denies. While we concur in the decree upon the case now presented, the conclusion reached should not be understood as cutting off appellants from a subsequent application to a court of equity should it become necessary for their future protection. In such event the history of the management of the corporation would be a proper subject of consideration; and should it appear that appellants as minority stockholders are being deprived hereafter of their share in the profits of the business, relief may hereafter be granted. While we are not, as we have said, entirely satisfied of the good faith of some of the transactions disclosed by the evidence, we find no material error in the record, and the decree of the Superior Court must be affirmed.