**LEBOLD et al. v. INLAND STEEL CO.**

No. 7578.

Circuit Court of Appeals, Seventh Circuit.

Dec. 29, 1941.

Rehearing Denied Feb. 17, 1942.

Silas H. Strawn, Frank H. Towner, Arthur D. Welton, Jr., and Raymond O. Mitchell, all of Chicago, Ill., for appellants.

Carl Meyer, Frederic Burnham, and Herbert A. Friedlich, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiffs, minority stockholders of the Inland Steamship Company, brought suit in the District Court to recover damages claimed to have been incurred by them by reason of alleged fraudulent acts of defendant Inland Steel Company in dissolving the Steamship Company, buying its assets and appropriating its business. The theory of plaintiffs was that defendant, owning some 80 per cent of the stock of the Steamship Company, had so utilized its dominant position as majority stockholder as to force the latter company out of a prosperous going business, to bring about its dissolution and to take over its property and its business to the detriment of plaintiffs. The court dismissed the complaint and this appeal followed.

The events preceding the dissolution and sale were before us in Lebold v. Inland Steamship Co., 7 Cir., 82 F.2d 351. There a bill to enjoin dissolution had been dismissed by the District Court. Upon appeal we held the complaint premature and affirmed the dismissal, without prejudice however, to the right of plaintiffs to apply for relief if developments thereafter, coupled with what had already happened, should justify such action. Neither the facts there involved nor the law there announced need repetition.

In addition to the facts presented in that record, we have here evidence of events subsequent to that decision. Throughout the duration of the litigation involved in the prior decision, the business of the Steamship Company continued without interruption or change. The operations for the year 1935, which were not in the prior record, were successful, as had been those of all earlier years, and on December 19, 1935 the directors authorized an annual dividend of $150 per share. The decision was announced on March 18, 1936. Eight days thereafter, notice of a special meeting of stockholders was given, to be held April 2, 1936, for the purpose of dissolution. Mr. P. D. Block, president of the Steamship Company and of the Steel Company presided. Others present were L. E. Block, a director of both corporations, Randall, vice-president, director and manager of the transportation business of the Steamship Company and also vice-president and director of the Steel Company, E. L. Ryerson, Jr., director of both companies, Morris, employee of the Steel Company and secretary of the Steamship Company, Truesdale of the Steel Company and Mullen and plaintiffs, minority stockholders, and counsel for the Inland Steel Company. Over the negative vote of the minority stockholders, a resolution was adopted directing dissolution of the Steamship Company. Block stated that the reason for such action had been submitted before and that he saw no good reason for "rehashing" it. One of plaintiffs asked Randall whether the Steamship Company had been given opportunity to bid for the Steel Company freight traffic or whether, as a director of the Steamship Company, he had made an effort to get the traffic on a competitive basis with other bids received. Randall replied that he had been instructed by President Block that "under no circumstances" did he, Block, wish to transact any business with the Steamship Company. Plaintiffs

requested that the minutes reflect the fact that the Steamship Company had been given no opportunity to bid on carrying freight for the Steel Company. Block observed that the meeting was a Steamship Company meeting and not one of the Steel Company and that "they were not obligated to give any information concerning" the latter. Randall went so far as to say that but for his courtesy, he would not have replied to the question. At the trial Randall testified that he had made no effort to secure traffic for the Steamship Company from any sources other than from the Steel Company because that company had kept the Steamship Company's boats busy during 1934 and 1935. He said further that when he became "certain of dissolution," he made no effort to get traffic for the Steamship Company on the theory that it might be able to continue in business. Later a directors' meeting was held on April 14, 1936, attended by the Blocks, Randall and Foreman Lebold. The latter did not vote. The directors authorized a sale of all assets on May 1. At that time the Steel Company bid in the three boats owned by the Steamship Company at $1,120,000, apparently their fair value. There were no other bidders. Defendant immediately took over the boats. It continued the transportation business formerly conducted by the Steamship Company and has carried it on without interruption or change, continuously, ever since.

The master found that plaintiffs were entitled only to their pro rata share of the proceeds of sale of the boats. The court agreed and dismissal followed. Plaintiffs insist that the District Court failed to apprehend the purport of and give effect to this court's decision and to draw from the facts in the record proper legal conclusions.

At the outset, giving consideration to the facts involved in the former proceeding and those presented for the first time, it is well to keep in mind that at all of the stockholders' meetings and directors' meetings involved, the majority stockholder, defendant, was in control. Defendant, owning 80 per cent of the stock, had the power to determine and did determine the actions of the Steamship Company. It is perfectly apparent, indeed, the officers of defendant themselves indicate that their interest was to force dissolution so that they might get rid of the minority interest and take over the assets and business of the Steamship Company. It is only with this elementary in-

disputable premise in mind that the proper answer to the controversy can be reached.

The directors of a corporation represent it and its stockholders; the majority stockholders of a corporation represent it and its minority stockholders. The vote of every director and of every majority stockholder must be directed to and controlled by the guiding question of what is best for the corporation, for which he is, to all legal intents and purposes, trustee. In his voting, in his management, he is bound to be wholeheartedly, earnestly and honestly faithful to his corporation and its best interests; his own selfish interests must be ignored. If when he votes he does so against the interest of his company, against the interest of his minority and in favor of his own interest, by such selfish action, by omission of fidelity to his own duty as a trustee, he forfeits approval in a court of equity. When the Blocks and Randall voted in the Steamship Company meeting they were within their statutory right to force a dissolution, but no legislative enactment could endow them with the right as trustees for the minority stockholders to take over for their own, through any legal device, plan or method all assets and all business of the company for which they were fiduciaries, if to do so was clearly and obviously against the best interests of the company and the minority stockholders. Obviously and admittedly these gentlemen were not thinking of the Steamship Company's interest; they were wholly ignoring it. Their sole interest lay in the Steel Company and, in the words of Randall, it "griped them to see that the minority stockholders were enjoying any profit." Therefore, we must accept the obvious fact, namely, that defendant and its officials, failing to perform their duties as stockholders and directors of the Steamship Company, were faithless to that company and to the minority stockholders. The latter were powerless to help themselves; they rightfully complain of the breach of trust upon the part of defendant resulting in damage.

In Pepper v. Litton, 308 U.S. 295 at page 306, 60 S.Ct. 238, 245, 84 L.Ed. 281, Mr. Justice Douglas, discussing the responsibility of directors and of dominant or controlling stockholders, said: "A director is a fiduciary. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328. So is a dominant or controlling stockholder or group of stockholders. Southern Pacific Co. v. Bogert, 250 U.S. 483, 492, 39 S.Ct.

533, 537, 63 L.Ed. 1099. Their powers are powers in trust. See Jackson v. Ludeling, 21 Wall. 616, 624, 22 L.Ed. 492. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. * * * He who is in such a fiduciary position *cannot serve himself first* and *his cestuis second*. He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty. He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters. * * * He cannot utilize his inside information and his strategic position for his own preferment. He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly. He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandisement, preference, or advantage of the fiduciary to the exclusion or detriment of the cestuis." Here the strategic position of defendant was used solely for its own preferment; the affairs of the corporation were "manipulated" to plaintiffs' detriment. Here defendant did "indirectly through the corporation what it could not do directly."

Defendant says it has not appropriated the business of the Steamship Company. The statutes of West Virginia, Sec. 80, Chap. 31, Art. 1, W.Va. Code of 1931, which control the dissolution proceedings, authorize the majority to dissolve and "discontinue the business of the corporation." Here the business was not discontinued; defendant took over the boats, it continued to operate them, it continued to devote them to the same transportation that they had always carried on. The business which had been prosperous for twenty-five years was turned over to defendant. By its strategic position, by its dominant situation, it could and did force a sale, bid in the property itself and thereafter continue to operate the business as before. The Steamship Company had been organized many years before to transport freight for hire; it had transported only the freight of defendant; this it continues to do, the only difference being that now the latter realizes all the profit which results from such transportation and the minority stockholders get none of it.

This transportation business was in no wise the business of the Steel Company. It was the business carried on by the Steamship Company, a business which the defendant expressly said it was going to put out of existence. In its strategic position of dominance, even though it was trustee for the minority stockholders, defendant warned plaintiffs that if they did not sell their stock, the Steel Company would end all business relations with the Steamship Company and that they must either sell their stock or see the Steamship Company go out of business. That these threats were not idle, that they were made with the ulterior motive, to bring duress to bear and to force plaintiffs, is now obvious. The business was never interrupted, never curtailed, never modified but continued without interruption.

What defendant might have accomplished under color of the West Virginia statute was discontinuance of the business. What it did, was to take, through form of a sale, the physical assets and the entire business of the Steamship Company. Whether we stamp the happenings as dissolution or with some other name, equity looks to the essential character and result to determine whether there has been faithlessness and fraud upon the part of the fiduciary. However proper a plan may be legally, a majority stockholder can not, under its color, appropriate a business belonging to a corporation to the detriment of the minority stockholder. The socalled dissolution was a mere device by means of which defendant appropriated for itself the transportation business of the Steamship Company to the detriment of plaintiffs. That the source of this power is found in a statute, supplies no reason for clothing it with a superior sanctity, or vesting it with the attributes of tryanny. Allied Chemical & Dye Corp. v. Steel & Tube Co. of America, 14 Del. 1, 120 A. 486. The books are full of instances of disapproval of such action.

If it be an absorption by the dominant member of all the returns of the corporate investment, or a sale of the property to oneself for an inadequate consideration, or deprivation by a syndicate formed to freeze out a minority stockholder through sale and dissolution or if the buyer and seller are the same, the right of a stockholder to vote becomes a power in trust when he owns the majority and assumes and exercises domination and control over corporate affairs. Such majority stockholders' vote "must not be so antagonistic to the corporation as a whole as to indicate that their interests are wholly outside of the interest of the corporation and destructive of the interests of the minority shareholders." Thurmond v. Paragon Colliery Co., 82 W. Va. 49, 95 S.E. 816. See, also, Jackson v. Ludeling, 21 Wall. 616, 88 U.S. 616, 22 L. Ed. 492; Lebold v. Inland Steamship Co., 7 Cir., 82 F.2d 351; Ervin v. Oregon Ry. & Nav. Co., C.C., 27 F. 625; Wheeler v. Abilene Nat. Bank, 10 Cir., 159 F. 391, 16 L.R.A.,N.S., 892, 14 Ann.Cas. 917; Lehigh Valley Transit Co. v. Zanes, 3 Cir., 46 F.2d 848; Jones v. Missouri-Edison Electric Co., 8 Cir., 144 F. 765; Wheeler & Lake Erie R. R. Co. v. Carpenter, 6 Cir., 218 F. 273; Board of Highway Commissioners v. Bloomington, 253 Ill. 164, 97 N.E. 280, Ann. Cas.1913A, 471; Dowling v. Charleston & W. C. R. Co., 105 S.C. 475, 81 S.E. 313; Rohrlich, "Corporate Control by Minority Stockholders," 81 Pa.Law Review 728.

██ Furthermore it seems to us that defendant may not be permitted to say that there were no values other than those of physical assets. By taking over the assets and by continuing the prosperous business of its former cestui trust defendant has removed itself from the place where it is permissible for it to contend that there is no prosperous business. That there was value over and above physical assets is perfectly obvious from the fact that a prosperous business existed and is still being conducted; that plaintiffs, if they had not been deprived of their interest, would be still sharing in the returns from that business and that at the present time all the profits of such are being enjoyed by defendant to the total exclusion of plaintiffs.

It follows that the true rule for determination of the value of plaintiffs' interest must be based upon the value not of the physical assets alone but upon all the elements mentioned in our former opinion and in arriving at such value, all those elements, including value as a going concern, must be taken into consideration. In twenty-five years the business of the Steamship Company has never ceased to be a going concern. It has been extremely prosperous. It continues to be so without threat of interruption. In this going concern plaintiffs had an interest.

Fortunately the testimony of the various witnesses of the respective parties is not greatly in controversy when this rule is followed. Plaintiffs produced testimony that, considering the earnings in the past and assuming that the business would continue to be in the future within a reasonable degree what it had been in the past, the shares of stock were worth at least $1500 each. Defendant's witnesses testified that, on the assumption that traffic relationship between the Steamship Company and the Steel Company were severed, the value of the stock would be the value of the ships. One added that if he could assume that the company would continue to earn the same amount as it had earned in the past, the value would be $2500 a share. Another of its witnesses testified that, assuming that defendant could at any time discontinue using these particular ships, the value of the stock would depend entirely upon the value of the physical assets; that he had given consideration to the past earnings but had allowed nothing on account of them because of his further assumption that defendant would cease giving its business to the Steamship Company and that there would not be other sufficient business available. He said "I did not use the earning record as an element in fixing the value; I had in mind that the company had been a big earner and yet under the circumstances (his assumptions) could not use that element in fixing value." Another witness testified similarly and upon the same assumptions. He said, however, "I did not consider past earning power and I added nothing to the value because of that factor. I assumed that the Steel Company was not going to give" the Steamship Company any traffic and assumed that the latter had no business and no opportunity to obtain profitable business. Upon this testimony and despite the fact that defendant company has continued at all times to operate the ships as heretofore and that those have carried the same freight as formerly, the master found that defendant had not appropriated anything belonging to plaintiffs as minority stockholders and that the value of such minority interests did not exceed their pro

rata shares of the proceeds of sale of the ships. The court approved this finding.

Thus it appears from both plaintiffs' and defendant's testimony that if the Steamship Company had been considered a going concern and if its business might reasonably be expected to continue, the value of plaintiffs' stock would be in the neighborhood of $2000 per share.

That the master was misled in his reasoning is apparent from some of his findings. He said "the permitted participation in handsome returns for twenty-five years seems to me a very reasonable limitation for the duration of any such obligation." Obviously this is fallacious. It is not a question of how much profit plaintiffs and defendant have previously enjoyed from ownership of stock in the Steamship Company, but a question of what the existence of the transportation business of that company, which defendant has wrongfully taken, is now fairly worth. Henry Ford could not rightfully say to one of the stockholders who invested in the Ford automobile company in its beginning and whose investment had multiplied thousands of times in value, that in view of the handsome returns he had had upon the investment, he must deliver the stock to Mr. Ford upon receipt of his pro rata share of the value of the physical assets of the Ford Company or Mr. Ford would dissolve the company and bid in the assets and deprive him of any such returns.

 After the sale of the physical assets, the proceeds were divided amongst the stockholders of the Steamship Company, each receiving his proportionate share. These were treated as liquidating dividends and as such plaintiffs receipted for them. Defendant now contends that by acceptance of the distributive share of the proceeds of sale of the boats, plaintiffs are estopped to prosecute the present suit.

No estoppel arises upon these facts. Plaintiffs are suing, not to rescind the sale, but to recover a money judgment, alleged to be due them because of their damage incurred by the fraud of defendant. This demand is for something over and above and in addition to plaintiffs' proportionate share of the proceeds of liquidation of physical assets. Estoppel arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice. Shortly stated, one may not assume a position inconsistent with a former position to the prejudice of his adversary. Texas Co.

v. Gulf Refining Co., 5 Cir., 26 F.2d 394; Pomeroy Equity Jurisprudence, Sec. 804. It is the injury accruing from inducement or silent acquiescence which creates the estoppel. Augustus v. New Amsterdam Casualty Co. of Baltimore, 7 Cir., 100 F. 2d 581; Arkansas Natural Gas Corp. v. Sartor, 5 Cir., 98 F.2d 527; United States v. S. F. Scott & Sons, 1 Cir., 69 F.2d 728; Clark v. Fisher, 2 Cir., 8 F.2d 588. Pomeroy, Equity Jurisprudence, Section 805, says: "The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. * * * He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

Plaintiffs did not remain silent. They brought their suit prematurely and this court affirmed its dismissal because of such prematurity, expressly stating, however, that the dismissal should be without prejudice to plaintiffs to complain if future developments should justify their fears. Defendant had the right under the statute of the state in which the Steamship Company was incorporated to work a dissolution. Following that it was bound to distribute the proceeds realized pro rata amongst the stockholders, but the receipt of such share in no wise affected the complaint of plaintiffs not that the sale should be rescinded but that in prosecuting the legal procedure of dissolution defendant had over-reached plaintiffs and damaged them. Their demand for damages was not involved at all in their receipt of the pro rata shares of the proceeds of sale of the Steamship Company's boats. Plaintiffs did not acquiesce in or consent to perpetration of a fraud against them. Defendant has not been misled; it has not relied, to its injury or prejudice, upon any acquiescence or inducement on the part of plaintiffs.

 Upon the record defendant is liable to plaintiffs. The damages to be allowed are the difference between what plaintiffs have received from the sale of the physical assets and what the stock was really worth as stock in a going prosperous concern continuing in business. Upon that rule the trial court will fix plaintiffs' damages.

The judgment is reversed for action by the District Court consistent with this opinion.