SODERSTROM et al. v. KUNGSHOLM BAKING CO., Inc. et al.

SODERSTROM v. COHN et al.

Nos. 10361, 10362.

United States Court of Appeals Seventh Circuit.

June 5, 1951.

Rehearing Denied July 17, 1951.

James Paul DeLaney, Louis C. Nettelhorst, Chicago, Ill., for Soderstrom.

Henry S. Blum, Bernard G. Sang and Vincent J. Carney, all of Chicago, Ill., for Kungsholm Baking Co. et al.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

On May 3, 1946, George Soderstrom brought suit in the District Court against defendants, Kungsholm Baking Company, Sweden House Bakers, Inc., Sholmkung Baking Corp., Irving H. Cohn, Samuel J. Hachtman, Evalyn Cohn, Rose C. Hachtman and Henry S. Blum, charging them with having conspired maliciously and wilfully to defraud plaintiff and to cheat him of his interest in and to the property of Kungsholm Baking Company, an Illinois

corporation; with having claimed, without authority from him, to have dissolved the corporation; with having delivered the corporate assets to a copartnership, and with having wholly deprived him of his 5% interest in the original corporate property and the profits arising therefrom. He prayed that defendants be declared trustees *ex maleficio* of the assets of both the corporation and its succeeding copartnership; that plaintiff be adjudged to be *cestui que trust* in the trust property; that an accounting be had; that defendants be restrained from concealing or disposing of any of said property, and that a receiver be appointed to take possession of the trust assets.

On May 16, John Soderstrom, Sr., filed in the same court his complaint, naming as defendants Kungsholm Baking Company, Inc., Sweden House Bakers, Inc., a corporation, Sholmkung Baking Corp., a corporation, Kungsholm Baking Company, a copartnership, Henry S. Blum, Samuel J. Hachtman, Rose C. Hachtman, Irving H. Cohn, Evalyn Cohn and George Soderstrom, the latter being made party defendant, as plaintiff said, for the purpose of determining his rights in the subject matter. Plaintiff, a subject of Sweden, averred that defendants Cohn, Hachtman and Blum and certain others had fraudulently, maliciously, and unlawfully conspired to cheat and defraud him of his rights and interests in the assets and income of the Kungsholm Baking Company; that they had paid themselves exorbitant salaries, bonuses and fees and otherwise defrauded plaintiff; that, being the owner of 10% of the stock of the corporation, he was entitled to an accounting for the corporate profits and those of the succeeding copartnership and of the later merged corporation. He prayed that the court charge the assets wherever found as a trust fund, that defendants be declared *ex maleficio* trustees thereof, that an injunction issue against disposition of the property pending the suit and that a receiver be appointed to hold and administer the assets.

The issues having been joined upon each complaint, the two suits were consolidated for trial and heard before a master, whose findings were approved by the court. In short, the court found that the Kungsholm Baking Company, a corporation, organized in 1941, was dissolved on September 28, 1943; that its assets were conveyed to a partnership of the same name, consisting of defendants Samuel J. Hachtman and Irving H. Cohn, in which John Soderstrom, Sr., had a 10% interest and George Soderstrom a 5% interest, the same as they had had in the corporation; that the interests of the parties in the assets, profits and business of the copartnership were in the same proportion as their holdings of stock in the original corporation; that defendants Hachtman and Cohn had made unwarranted, greatly excessive withdrawals of funds from the partnership which were presumably fraudulent; that it was immaterial whether John Soderstrom was induced to sign a waiver of stockholder's notice and consent to the transfer of the assets of the corporation for the reason that defendants admit that all interested parties continued to own the same interests in the copartnership as they had had in the corporation; that John Soderstrom was entitled to 10% of the net profits and assets; that the property of the succeeding corporation was held in trust *ex malificio* for the benefit of the beneficiaries; that an accounting should be had to determine how much of the withdrawals by defendants was improper and to determine what plaintiff, as owner of 10% interest in the original corporation, the copartnership and the succeeding corporation, was entitled to recover.

As to certain other corporations the court found that "The evidence * * * is insufficient to indicate that any of the funds of Kungsholm Baking Company were used by Sweden House; nor was there any evidence to indicate that any of the material and supplies of Kungsholm Baking Company went into the bakery goods sold by Sweden House"; and concluded "that there is no evidence in the record to indicate that the plaintiffs are entitled to any interest in the profits made by Sweden House Bakers, Inc., during the time that Sweden House was doing business and both before and after it was merged with the subsequent Kungsholm Baking Company,

Inc., at its latest incorporation in October of 1945." It found and ordered that "John Soderstrom, Sr., is entitled to receive 10% of the net assets of the Kungsholm Baking Company, a corporation, during the year 1942 and until its dissolution in September, 1943, and to receive 10% of the net assets of the Kungsholm Baking Company, a partnership, from September 30, 1943, to its transfer into a corporation on October 8, 1945." The court also concluded that in equity the said 10% interest of John Soderstrom, Sr., is a trust upon the assets of the new Kungsholm Baking Company, Inc., a corporation, regardless of the various transfers and that for whatever amount an accounting would show John Soderstrom to be entitled to, a trust should be imposed in behalf of John Soderstrom, Sr., to that extent upon the assets of the Kungsholm Baking Company, Inc., a corporation. The court found further that George Soderstrom likewise was a copartner to the extent of a 5% interest and that he was entitled to receive 5% of the same net profits and assets, but that the court could not grant him relief for the reason that he is a resident of Illinois, and, therefore, not entitled to maintain his suit as a nonresident of that state. The judgment entered allowed John Soderstrom a 10% interest in the net assets of the original corporation and the copartnership and their profits, eventually conveyed to the final corporation, and awarded an accounting to determine how much had been wrongfully withdrawn from the treasuries of the respective companies and how much was due John Soderstrom. The suit of George Soderstrom was dismissed for want of jurisdiction.

Both George and John Soderstrom have appealed. The defendants Blum, Cohn and Hachtman and the two latter's respective wives, assignees of part of the interest of their husbands, have filed a cross-appeal. George Soderstrom contends that his suit was improperly dismissed; that the court should have found that he was a resident of Texas and that diversity of citizenship existed; that, irrespective of this fact, the court, having taken jurisdiction of the res, should have adjudicated the rights of all parties having any interest therein including himself. Both John and George assert that the attempted dissolution of the Kungsholm Baking Company, a corporation, should have been declared invalid; that the court properly awarded the relief it did, but that it should have also awarded them 10% and 5% respectively of the profits of Sweden House, Inc., and other corporate defendants. The defendants contend in their cross-appeal that the court should have granted no relief whatsoever.

■ Obviously the correctness of the findings depends upon whether, from examination of the entire record, it appears that they are supported by substantial evidence. The record is rather voluminous and it is impossible, within the compass of a reasonably extended discussion, to refer to all parts thereof. A terse resume discloses the following, which is largely, if not entirely, undisputed. John Soderstrom, Sr., is a citizen of Sweden. When he came to America, he brought with him his son, George, then seven years of age. John has never applied for naturalization. George was naturalized in Texas while in the United States Army in World War II. John's first contact with Hachtman and Cohn occurred when the latter sought his services in baking ice-box cookies and other articles for sale by them, operating under the name Miracle Baking Company. John testified that during his connection with this copartnership he did not receive payment in full and that the company ended in bankruptcy, as the result of which he received some 10% of his claim for services. After this unfortunate experience with the two defendants, he was again approached by them in an effort to procure his cooperation in providing recipes and formulae for ice-box cookies and his useful experience in making them. They must have deemed John's knowledge and skill of value, for, after once utilizing them, they again sought him out. Arrangements were perfected, as a result of which Kungsholm Baking Company came into existence, these two defendants owning 85%, John 10% and George 5% thereof. The product, designed by John and produced by George, became a commercially successful ware.

Large quantities were sold to chain stores and, according to the master, relatively large sums of money were earned in the succeeding years, excessive parts of which the court found were diverted to defendants.

The corporation had been organized in 1941. On November 22, 1942, George, vice president, and 5% shareholder of the corporation entered the United States Army. On November 13, 1943, John Soderstrom was induced to participate in an attempted dissolution of the corporation, as he says, by the false representations of Hachtman and Cohn. Whether these representations were in fact made seems to us immaterial, for the reason that defendants admit that at all times both John and George owned the same interests in the succeeding copartnership, which received the assets of the allegedly dissolved corporation. George was in the army. He never consented to the attempted dissolution.

After September 25, 1943, when the Secretary of the State declared the corporation dissolved, practically all of the physical corporate assets were conveyed to a copartnership consisting of Hachtman and Cohn and their respective wives, in which John had a 10% interest and George 5%. About the same time Hachtman and Cohn formed a new corporation, Sweden House Bakers, Inc., of which they were the sole shareholders, officers and directors. This corporation's address was the same as that of the dissolved corporation and that of the copartnership. Its product was the same as that of the corporation and its successor; its employees were the same. This situation continued through February, 1945. John testified that he was repeatedly told by Hachtman and Cohn that, under whatever corporate or copartnership name it was conducted, all the cookie business was part and parcel of one enterprise. Under the partnership agreement, the partners agreed to pay a salary to each of the Soderstroms of $75 a week and to themselves $150 a week, each to be charged against the respective shares of the earnings of the copartnership. Hachtman, who had been an attorney, wrote to George saying that the papers that he had sent George

"simply change the form of our operation from a corporation to a partnership, leaving your interest, your dad's, Irving's and mine exactly the same as they were heretofore."

Sweden House Bakers, Inc., acting through Hachtman and Cohn in 1945 purchased a plant in southwest Chicago. Thereupon some of the machinery and trucks of the Kungsholm Baking Company, a copartnership, and some of its sugar were sold for a total of $35,000. The purchases were taken in the name of the Hacoh Trusts of which Hachtman and Cohn were the beneficiaries. Sweden House Bakers, Inc., moved into the plant in March, 1945, paying Hacoh Trusts a monthly rental of $1,750, plus a percent of the profits.

John Soderstrom became supervisor in the new bakery, remaining there until shortly before filing his suit. Finally on October 18, 1945, a new corporation, Kungsholm Baking Company, Inc., was organized with Hachtman and Cohn as sole owners, and to it, defendants caused to be transferred all the assets of the partnership, Kungsholm Baking Company, and caused to be merged with it the Hacoh Trusts and Sweden House Bakers, Inc.

It was upon this and related testimony that the court found that John Soderstrom was entitled to 10% interest in all the property of the original corporation and the profits resulting therefrom passing to the ultimate corporation, which should be treated as held in trust *ex maleficio*, and ordered an accounting. We have examined the evidence carefully and conclude that it is such that we can not say as a matter of law that the findings are clearly erroneous or substitute our judgment for that of the trial court in concluding that the record reflects, over a period of years, conduct upon the part of defendants Hachtman and Cohn that can be stamped only with the stigma of well established fraud.

We cannot express too strongly our approval of the legal condemnation which defendants have brought upon themselves. Hachtman and Cohn have taken the product of the newcomer to America, capitalized on his formulae and recipes,

divided many thousands of dollars amongst themselves as the fruit of the wares produced through the father's devising of recipes and formulae and the son's supervision of the baking and production, without fairly accounting to either of them.

These defendants, one of whom had been an attorney, should have learned long ago that dominant partners or majority stockholders can not manipulate a business in which there are other minority interests so as to injure the minority or deprive it of its proporationate share of the fruits of the undertaking. They can not appropriate to themselves a business belonging to an entity to the detriment of a minority stockholder or party in interest. Lebold v. Inland Steel Company, 7 Cir., 125 F.2d 369; Lebold v. Inland Steamship Co., 7 Cir., 82 F.2d 351. As the Supreme Court said in Upton, Assignee v. Tribilcock, 91 U.S. 45, 23 L.Ed. 203: "The property of a corporation is a fund for the payment of its debts, a trust fund to be managed for the benefit of its shareholders during its life and for the benefit of its creditors in event of dissolution," and, as the Illinois Court said in Robertson v. Bucklen & Co., 107 Ill.App. 369 at page 376: "No act of the majority can purge the fraud of appropriating the common property to their own benefit by any portion of the corporators. * * * And it is equally a fraud and abuse of the fiduciary authority of a controlling stockholder and director to so manage the corporation's affairs, no matter under what pretense, as to prevent all stockholders alike from sharing in the success of the company's business." Furthermore "property which has been appropriated by another, and upon which a trust has been fixed, may in equity be followed either in its original or in its altered form, so long as it can be identified, and so long as superior rights of third parties have not intervened." Winger v. Chicago Bank & Trust Co., 394 Ill. 94 at page 111, 67 N.E.2d 265, at page 276. For these abiding principles defendants have shown not the slightest regard.

■ The findings that the Soderstroms should not participate in the profits of certain other corporations is, we think, sup-

ported by the preponderance of the evidence. It is not clearly erroneous.

Soderstrom complains because the court granted no relief as against defendant Blum. We do not find in the record any evidence which would justify us in holding that the finding that Blum acted merely as an attorney and did not participate in the fraud is clearly erroneous.

There remain the questions presented by George Soderstrom. The facts that we have related speak with equal eloquence and conviction in support of George's claim for relief, and the court and master so found. However, the court dismissed George's complaint because he relied for jurisdiction upon diversity of citizenship, whereas the court found that he was not a resident of the state of Texas, as he averred, but rather a resident of Illinois, thus destroying diversity. If the court was wrong in this respect, the judgment should have afforded George the same relief as it gave to John. Consequently it becomes important to determine whether George has any standing upon which to sustain his claim of citizenship in Texas or to entitle him to relief otherwise.

■ It will be remembered that George did not join in the suit with his father but instituted a suit of his own, seeking the same relief as to him as was sought by John. He depended upon diversity of citizenship for jurisdiction. The court found that George was in 1942 domiciled in Chicago; that he entered the army, was stationed for a while in Texas, there naturalized and after the war returned to Chicago where he himself testified he was living at the time he instituted the suit. Despite any claim to the contrary, the evidence was clearly sufficient to sustain the court's findings that he was a resident of Illinois and not of Texas.

■■ But George insists that he should be treated as a co-plaintiff with John. However, the two did not join as co-plaintiffs and if we were to treat them as such, the result would be the defeat of both lawsuits, that brought by George as well as that brought by John, for, where more than one plaintiff sues more than one defendant

and the jurisdiction rests on diversity. of citizenship, each plaintiff must be capable of suing each defendant. Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115, 117; Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435. The further suggestion that George is a proper party defendant in John's suit can not be sustained for the reason that essentially their interests are identical and not adversary in character. Upon proper realignment George would become a plaintiff.

Alternatively, plaintiffs insist that the court should treat this as an action in rem and permit all parties in interest to intervene. Unfortunately, however, the proceedings have not reached such a stage. We are not passing upon the right of interested parties to intervene in marshaling of assets and distribution of proceeds. We are determining merely the question of whether George has the right to come into federal court as a plaintiff to enforce his cause of action and, inasmuch as we are not justified in setting aside the court's finding that he is a citizen of Illinois, we must approve the dismissal of his cause of action. Whether, if, in the execution of its judgment, the court may find it necessary hereafter to seize and take possession of assets, marshal them and distribute them, George may intervene as participant in the proceeding is a question not presented to us.

The judgment is affirmed. Plaintiffs will pay one-half the costs of the appeal and defendants filing the cross appeal one-half.