**Wyndham H. GABHART,**
**Plaintiff-Appellant,**

v.

**Howard GABHART et al.,**
**Defendants-Appellees.***

**No. 75–2090.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1977.

Decided March 8, 1977.

* *Editor's Note:* The decision of the United States Court of Appeals, Fourth Circuit, in *Capital Investors Company v. Executors of the Estate of Morrison*, published in the advance sheets at this citation (545 F.2d 877) was withdrawn from the bound volume at the request of the court.

878

Frank E. Spencer, Robert W. McNevin, Indianapolis, Ind., for plaintiff-appellant.

Thomas M. Lofton, Virgil L. Beeler, Indianapolis, Ind., for defendants-appellees.

Before SWYGERT, TONE and WOOD, Circuit Judges.

TONE, Circuit Judge.

The appeal in this diversity action raises a number of questions concerning squeeze-out mergers accomplished through the merger provisions of the Indiana Corporation Act, Ind.Stat.Ann. § 23–1–5–1, et seq. The District Court entered a summary judgment against plaintiff, a squeezed-out minority shareholder. In reaching this decision, the District Court held that a minority shareholder who does not object and demand his appraisal rights under Ind.Stat. Ann. § 23–1–5–7 cannot attack an allegedly

invalid merger and that a derivative action by such a shareholder does not survive a merger. As these are important questions of first impression under Indiana corporation law, we have determined that they are appropriate for certification to the Supreme Court of Indiana pursuant to Indiana Appellate Rule 15(N) and our Circuit Rule 13.

In 1968 plaintiff and the individual defendants, who are his father, his two brothers and one Jerome B. Walker, joined in organizing corporate defendant Washington Nursing Center, Inc. to operate a nursing home in Washington, Indiana. Plaintiff received 100 of the 500 shares of outstanding stock.

All five shareholders were directors until 1970, when plaintiff resigned, stating that he was doing so because, "[A]mong other reasons, I will find it most difficult to attend directors' meetings," and "I am not in position to help manage the corporation under existing circumstances." Plaintiff lived in the South and was engaged in a business which required him to travel with carnivals in places distant from Indiana.

Extended efforts to negotiate a purchase of plaintiff's shares by the other shareholders proved unsuccessful. In 1972 the other shareholders conceived and carried out a corporate restructuring under the Indiana Corporation Act which would have the effect of transferring the assets of the corporation to a new corporation in which plaintiff would not be a stockholder and compensating plaintiff for his interest in the old corporation by giving him a debenture.

The agreement of merger was entered into between the old company (the "Merging Company") and a newly-formed corporation (the "Surviving Company"), the stock of which was owned by the individual defendants. First executed by the boards of directors of the two companies and then approved by their stockholders, all in conformity with the Act, the agreement provided that on the effective date of the merger the following would occur:

(1) The Merging Company will merge into and become a part of the Surviving Company, leaving the Surviving Company with all the property of both companies and all the rights and liabilities of both companies.

(2) "Any claim existing or action or proceeding pending by or against the Merging Company or the Surviving Company may be prosecuted to judgment as if the merger had not taken place or the Surviving Company may be substituted in the place of the Merging Company."

(3) Each shareholder of the Merging Company shall surrender his shares and receive in exchange therefor a debenture equal in amount to the number of his shares times $300, the debenture to bear interest at 7½% and to mature in 5 years.

(4) Each stockholder of the Merging Company "shall cease to be such and shall have no interest in or claim against the Surviving Company by reason of having been such a shareholder, except the right to receive the above described debenture."

On June 23, 1972, a copy of the merger agreement and a notice of the special meeting of shareholders of the Merging Company called for July 3, 1972 to vote on the merger were sent to plaintiff by registered mail at the three addresses shown for him on the corporation's books. He did not receive the mailing, however, until July 10, one week after the shareholders' meeting and 23 days before the expiration of the time allowed him by §§ 32 and 37 of the Act, Ind.Stat.Ann. §§ 23–1–5–2(e) and 23–1–5–7, to object to the merger and demand payment of the value of his shares. On July 6, notice of the approval of the merger by the shareholders of the Merging Company was sent to plaintiff, who received it on July 17, 16 days before expiration of the time to object and demand. Plaintiff did not pursue the object-and-demand procedure.

Before the effective date of the merger, the individual defendants, who were the only shareholders of the Surviving Company, exchanged their stock in the Merging Company for additional stock in the Surviv-

ing Company in proportion to their existing interests in the Surviving Company. Thus plaintiff and the Surviving Company were left as the only shareholders of the Merging Company, which was then dissolved, and only plaintiff was to receive a debenture in exchange for his stock.

After approval of the merger by the stockholders of both companies, but before the date the merger was to become effective, plaintiff filed this action against the Merging Company and the individual defendants, as officers and directors of that company, alleging that the latter had wronged the corporation by appropriating corporate funds for their own use and had wronged him by denying him access to corporate records and participation in corporate decisions. The only pecuniary injury alleged was to the corporation. It is agreed by the parties that this action was derivative insofar as it sought pecuniary relief.

After the merger had become effective, defendants moved for summary judgment on the ground that plaintiff, who was no longer a shareholder, could not maintain an action on behalf of the corporation. In response to this motion, plaintiff amended his complaint by adding a count attacking the validity of the merger. Plaintiff alleged that by failing to inform him of the planned stock-for-stock exchange, defendants had fraudulently misrepresented the terms of the merger and that the sole purpose of the merger had been to deprive him of his interest in the business operated by the Merging Company.

Defendants' motion for summary judgment was supported by affidavits, documents, and depositions. Plaintiff did not file any controverting affidavits or other material. The only issue identified in his "Statement of Genuine Issues," filed in accordance with a rule of the District Court, was "as to the validity of the alleged merger."

In the District Court plaintiff argued that summary judgment was improper because there were genuine issues of fact concerning the defendants' intent in arranging the merger. For purposes of this appeal, we assume that the facts are as plaintiff alleges: that the merger agreement was intentionally misleading, that defendants knew the notices they sent were likely not to reach plaintiff in time, and that the sole purpose of the merger was to eliminate plaintiff as a stockholder.[1]

Turning first to the claim of fraudulent misrepresentation of the terms of the merger, an analysis of the uncontroverted facts shows that claim to be without merit. Although plaintiff was unaware of the contemplated stock-for-stock exchange which was to precede the merger, he does not allege that his failure to dissent from the merger was induced by his misunderstanding of its terms. From the agreement, plaintiff knew that his ownership interest in the Merging Company would be converted into a creditor's interest in the Surviving Company. He could hardly have been prejudiced by the fact that the individual defendants made their part in the merger tax-free by taking additional stock, rather than debentures, in a company they already owned. Far from harming plaintiff, the elimination of four-fifths of the debenture obligations that the Surviving Company had agreed to assume presumably benefited him.

There is no genuine issue of fact relating to compliance with the formal re-

---

1. The District Court found as a fact that defendants arranged the merger because plaintiff's threats of a stockholder's suit made it impossible for the corporation to attract necessary additional financing. Plaintiff had alleged, however, that defendants sought to eliminate him in order to conceal their mismanagement of the corporation. If the issue of motivation was relevant, plaintiff should not have been foreclosed by the defendants' statements of what their motives were, and the determination of this controverted issue on a summary judgment motion was error. Cf. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

quirements of the Act, including·those relating to notice. Uncontroverted affidavits and documents show timely mailings and plaintiff's eventual receipt of the mailings. Plaintiff's present contention that he instructed the secretary of the corporation to send future notices to his attorney in Washington, Indiana, appears to be an afterthought. He did not refer to a notice issue before the District Court, either in his Statement of Genuine Issues or his memorandum in opposition to the motion for summary judgment. Plaintiff's deposition testimony on that issue would not support a finding that such an instruction was given: After much vacillation, his final version was that he had not personally notified the corporation of the change of address, but he "believed" his former attorney had done so by a letter which he could not recall seeing. No such letter has ever surfaced, and no affidavit or deposition from the attorney was ever filed. On the other hand, defendants' showing unequivocally establishes that the three addresses shown for plaintiff on the corporate records, to which notices were mailed, did not include that of the attorney.

Despite this showing of compliance with the Indiana merger provisions, plaintiff argues that the merger may be attacked under state law because it was not effected to accomplish a business purpose, but rather was a device used by the majority to deprive him of his stockholding interest. In support of his contention, plaintiff cites cases decided under Georgia law, *Bryan v. Brock & Blevins Co.*, 490 F.2d 563 (5th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974), and federal securities law, *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir.), *cert. granted*, —— U.S.

——, 97 S.Ct. 54, 50 L.Ed.2d 74 (1976). See also *Lebold v. Inland Steel Co.*, 125 F.2d 369 (7th Cir. 1941), *cert. denied*, 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749 (1942) (West Virginia law).

■ Defendants do not respond directly to this argument. Instead, they contend that, once the notice requirements of the Act were satisfied and the terms of the merger were disclosed, it became plaintiff's responsibility to object and demand payment for the value of his shares. When he failed to do so, he was "conclusively presumed to have assented to [the] merger" under § 37 of the Indiana Corporation Act and thus could no longer attack its validity. Given the narrow scope of appraisal proceedings under the Act, this argument leads to the conclusion that a minority stockholder's only right in a merger is to payment of the fair value of his shares and therefore that he may be squeezed out in a merger, with or without a proper business purpose. Whether a shareholder's rights are so limited under Indiana law is an important question requiring interpretation of state statutes and state corporation policy which, in view of the certification procedure made available to us by Rule 15(N) of the Indiana Supreme Court, should be answered by that court as the authoritative and final arbiter of state law.[2]

Plaintiff's derivative claim for corporate waste and mismanagement also presents novel questions of Indiana law which are best resolved through the certification procedure.[3] Section 37 of the Indiana Corporation Act provides that upon the effective date of the merger a shareholder who has objected in writing and demanded payment of the value of his shares [4] "shall cease to be

**2.** In view of the defendants' failure to respond directly on the business-purpose issue, the Indiana Supreme Court, if it accepts the certification, may wish to request additional briefs from the parties on that point.

**3.** We find the other claims that plaintiff sought to assert individually for failure to account, to allow plaintiff access to corporate records, or to allow him to participate in management in-

sufficient in law. Because he was not a director, plaintiff was not entitled to participate in management. On the other claims, he seeks no monetary damages, and his action was filed too late for effective equitable relief.

**4.** And who, if he and the corporation do not agree on the value within 30 days after the effective date of the merger, may institute appraisal proceedings in a state trial court.

a shareholder and shall have no rights with respect to such shares except the right to receive payment therefor." Ind.Stat.Ann. § 23–1–5–7. The merger agreement in this case provides that upon the effective date of the merger "each shareholder of the Merging Company shall cease to be such and shall have no interest in or claim against the Surviving Company by reason of having been such a shareholder, except the right to receive the above described debenture." As noted above, under § 37 plaintiff was presumed to have consented to this provision. The merger agreement also provides, however, in the passage quoted in full above, that an action pending against the Merging Company "may be prosecuted to judgment as if the merger had not taken place" against either the Merging or the Surviving Company. Defendants argue that this survival-of-actions clause does not apply to plaintiff's derivative action because when he lost his status as a stockholder he fell victim to the rule that only a shareholder may maintain a shareholder's derivative action. Plaintiff argues that this result would render him unable to protect his interest against defendants' mismanagement because, even if he had objected to the merger, he would have lost his status as a shareholder by operation of law.

■ With the foregoing explanation, we respectfully certify the following questions to the Supreme Court of Indiana pursuant to Rule 15(N):

1. Assuming that the technical requirements of Indiana's merger statute were satisfied, could the minority shareholder in the Merging Company nevertheless attack the merger under Indiana law on the ground that it was not motivated by a valid business purpose? Or was his sole remedy to object to the merger and demand payment for the val-

ue of his shares within the prescribed time limits?

2. Assuming that the merger cannot be attacked, may the minority shareholder in the Merging Company, whose formal status as such was terminated by the merger, continue to prosecute a derivative action, filed after the approval but before the effective date of the merger, against the Merging Company or its successor? Or was the shareholder's sole remedy again that of objecting and demanding payment for the value of his shares and then litigating the derivative claim in the appraisal proceeding by asserting that the claim was a valuable right of the corporation which should be appraised and included in the corporation's assets?

3. If the minority shareholder's derivative action can be maintained as such and damages are recovered for the corporation in that action, may he recover in that proceeding his pro rata share of the damages, despite his failure to object to the merger and demand payment for the value of his shares in accordance with the Indiana Corporation Act?

We are transmitting to the Supreme Court of Indiana the briefs and the appendix in this case, and will transmit any additional papers that court requires. No further proceedings will take place in this court until the Supreme Court of Indiana has made such answer to the certificate as it deems appropriate.